# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CLARENCE M. EASTERLING,

        Plaintiff,

  v.                                                Case No. 07-CV-209

CHRIS MOELLER and DAVE PEHL,

        Defendants.

## ORDER

The plaintiff, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is proceeding *in forma pauperis* on a claim that the defendants searched his bag and apartment in violation of the Fourth Amendment to the United States Constitution. The parties have filed cross-motions for summary judgment, which will be addressed herein.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves ..."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, ... upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The fact that both parties move for summary judgment does not establish that a trial is unnecessary or empower the court to enter judgment as it sees fit. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2720 at 327-28 (3d ed. 1998). The court may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the

basis of the material facts not in dispute. *See Mitchell v. McCarty*, 239 F.2d 721, 723 (7th Cir. 1957).

## FACTS[1]

The plaintiff, Clarence M. Easterling, was a full-time student at the University of Wisconsin – Parkside (UWP) during the 2000-2001 school year and resided on campus at the University Apartments, in Apartment 7F. During the Spring 2001 semester, Easterling's roommates were Benjamin Cowan, Dallas Diener, Michael Lowry, and David Scheuer. Easterling sold small quantities of marijuana during that time. While living in Apartment 7F, Easterling and Dallas Diener saw and talked to each other every day. Diener was aware that Easterling sold marijuana, but did not inform law enforcement. Easterling, therefore, entrusted his bag to Diener for safe-keeping and told him not to look into the bag. The bag was zipped closed when Easterling provided it to Diener. Diener did not look into or touch Easterling's bag.

On April 2, 2001, an armed robbery occurred at UWP's Union Building. Defendants, Officer Chris Moeller and Officer Dave Pehl, investigated the robbery and believed Easterling to be involved with it. Officer Pehl questioned Dallas Diener at the UWP police station to find out if he had any information. Diener informed Officer Pehl that he was in possession of the bag mentioned above and, upon receiving this information, Officer Pehl went to Apartment 7F to retrieve Easterling's

---

[1] This section is taken from the Plaintiff's Proposed Findings of Fact (PFOF), the Defendants' Response to the Plaintiff's Proposed Findings of Fact (Def. R. PFOF), and the Plaintiff's Reply to the Defendants' Response to the Plaintiff's Proposed Findings of Fact (P. Reply PFOF). Facts are undisputed unless otherwise indicated.

-3-

bag from Diener's room. Diener gave consent to search his room for Easterling's bag. Prior to the search for, and of, Easterling's bag, Diener told Officers Moeller and Pehl that he never touched or looked into Easterling's bag. When Officers Moeller and Pehl obtained Easterling's bag, the bag was zippered closed. Moeller and Pehl unzipped the bag and searched it. No search warrant was issued for Easterling's bag.

The parties dispute whether Diener consented to the defendants to search the bag. Officer Moeller stated in his search warrant affidavit for Easterling's room that Diener gave consent to search Easterling's bag. Easterling asserts that Moeller's statement in the search warrant affidavit is false. According to Easterling, Diener gave consent only to search his room for the bag and Diener's consent could not extend to the bag itself because Diener did not have authority to consent. According to the defendants, Diener gave the bag to the defendants and, therefore, he gave defendants consent to search the bag.

The parties also dispute whether Officers Moeller and Pehl's search of Easterling's room exceeded the scope of the search warrant issued. According to Easterling, Moeller and Pehl exceeded the scope of the search warrant when they took papers that belonged to Easterling that were not subject to seizure. He asserts that the paper seized by the defendants with the name N.N. on it, is a woman Easterling met at a club and that no allegation was made that the woman was involved with the crime in this matter. He further alleges that Officer Moeller did not

believe the search warrant issued for Easterling's room authorized the seizure of said papers, because he deliberately omitted them from his "Return of Officer," which was the document he submitted to the warrant issuing judge that described all of the items he seized pursuant to the warrant's execution. According to the defendants, since the Affidavit for Search Warrant indicates that at least two people were involved in the crime the defendants were investigating, and the Search Warrant indicates that "in and upon the . . . premises . . . occupied by Clarence Easterling . . . there are now located and concealed certain things . . . which things were used in the commission of a crime," the search warrant did include the papers with names and telephone numbers on them.

**Easterling's Exhibits**

Portions of several of the exhibits attached to Easterling's affidavit are quoted below. Officer Pehl's UW-Parkside Police Department, Supplemental Report, dated April 4, 2001, states in relevant part:

> Today, I was briefed by Officer Moeller who said that he had information that the residents of Apartment 7F might have information about this incident. I responded with him to Apartment 7F and spoke with Diener, Cowan, Scheuer, and Lowry. All of them agreed to come back to U.P.P.S. to answer questions. Scheuer said that Cowan would probably have some information because Cowan spoke with Easterling all of the time.
>
> I spoke with Cowan who said that he was willing to answer questions about this. He said that he would tell me anything that I wanted to know. He was also told that his statement was voluntary. I asked him if he had ever bought a box of pistol ammunition for Easterling. Cowan stated that he had, but was unaware of the brand. He said that he would be able to identify the box if he saw it again. He said that the

caliber was .380. He also said that he has seen Easterling recently with a black small semi-automatic handgun. He described it as a black beat up .380 caliber with wood grain handles. I asked him if he had seen Easterling with a Halloween mask that looked like one from the movie "Scream". He said that he had seen him with one on 03/31/01. I asked Cowan if he had seen Easterling with black zip strips. He said that he had not seen them, but he had heard that he had some. I asked him if he knew anything about a drill. Cowan said that he had bought a Black and Decker brand drill for Easterling. He said that Easterling gave him some money and asked him to do a favor for him. Cowan said that at the time, he was unaware what it was going to be used for. Cowan said that the drill was bought at the Menard's store in Mt. Pleasant. The ammunition was bought at the Wal-mart store next to Menard's. Cowan told me that he had no knowledge of what was being planned. It should be noted that Cowan and Lowry were out of town at the time. Cowan gave a written statement and a consent to search his room.

I then talked to Diener and explained that I was looking for information about an attempted robbery that occurred Sunday night. I asked him if Easterling had ever asked him to hold onto anything of his. Diener told me immediately that Easterling had approached him and asked that he allow a bag to be put into his room. Easterling asked in a threatening manner. Diener said that Easterling made it sound like Diener had no choice in the matter. Easterling also told him not to look in the bag. Diener said that he never touched the bag and never looked in it. Diener described it as being a small black bag with a zipper. Diener gave consent to search his room for the bag. He said that the bag would be under his bed. Diener gave a written statement and consent to search his room and common area.

After I had consent to search, Officer Moeller and I, along with the four residents, went back to apartment 7F. I had Diener show me his room and where I would locate the bag. He said it would be under his bed. When I went into the room, there was a white female lying in Diener's bed. She was identified as Molly M. Leslie, F/W. I pulled a dresser out of the way in order to gain access to the area under the bed. I saw a large cardboard box, a blue plastic tote full of clothes, and three bags. The first bag was a gold travel bag that was empty and open. The second was a large empty duffle bag. The next was a smaller black duffel bag that felt like it was empty. I opened the zipper approximately six inches and looked inside. I saw some black zipper strips and white

> latex gloves. I then stopped looking into the bag and did not search it. I showed the bag to Diener, who identified it as being the one he was told to put under his bed. The bag was then confiscated and transported to U.P.P.S. Diener said that there was nothing else of Easterling's that would be found in his room. The room was searched without finding anything else.
>
> . . .
>
> I then guarded the door to Easterling's bedroom while Officer Moeller obtained a search warrant. Nobody entered the room while I was there. When Officer Moeller returned, we searched Easterling's room. Also present were ADA Christine Gabron and Officer Peroutka. Officer Moeller and I conducted the search. I found a white security box on the floor near the wall and dresser. Inside, I saw several large clear plastic zipper bags. Under the bags, I found another plastic bag that contained seeds that looked like marijuana. The seed also smelled like marijuana. When I lifted a sheet off the bed, I found a key chain. This key chain had a blue metal clip, along with several keys. One of the keys was a Chrysler vehicle key with a light yellow head. The key chain matched the description of the keys that were stolen from the victim during the robbery. Under the bed, a single black zipper strip was found. This was similar to the one that I had seen in the bag found under Diener's bed. The rest of the room was searched without finding any other evidence. All evidence found was turned over to Officer Peroutka for processing. A copy of the search warrant was also left in Easterling's room.

(Easterling Aff., Ex. 501 at 1-2.) Officer Moeller's Affidavit for Search Warrant, dated April 4, 2001, states in relevant part:

    a) On 04-02-01, at approximately 0330, an armed robbery occurred at the University of Wisconsin Parkside Union Building L-1 level in the food service locker room.

    b) In the Union Building, a custodian for Marriott Food Services was confronted by two suspects who wore masks.

  I. One suspect was described as being approximately 6-foot tall, medium build, wearing dark clothing and a mask that was described as a "Scream Halloween Mask". He was armed with a small, semi-auto, dark colored handgun. This suspect spoke and according to the victim sounded to be black.

  ii. Suspect two was described as being approximately 5 foot 6 inches tall, small build, wearing dark clothing and wearing what was described as a "Scream Halloween Mask".

. . .

g) On Wednesday, 04/04/2001, around 0730, Officer Dave Pehl 526, and I went to Apartment 7F and met with the occupants, David Scheuer, Benjamin P. Cowan M/W, Michael P. Lowry M/W, and Dallas Diener M/W for the purpose of speaking to Easterling's roommates. UW-Parkside Officer Jim Heller had been informed by David Scheuer that he overheard Easterling talking to Dallas J. Diener about hiding a bag for him. Based on that information, UW-Parkside Officer Pehl spoke to Dallas Diener who confirmed that he was given a bag by Easterling. Diener gave the officers consent to search the bag, and the following items were recovered:

  a. Black bag, containing a black hooded mask with long white plastic face, off white latex gloves, and a clear bag of black zip ties.

(Easterling Aff., Ex. 502 at 2, 3.)

The April 4, 2001 Search Warrant states in relevant part:

  WHEREAS, Officer Chris Moeller has this day complained in writing to the said Court upon oath that on the 4th day, of April 2001, in Kenosha County, in and upon certain premises in the University of Wisconsin-Parkside, Kenosha County, occupied by Clarence Easterling and more particularly described as follows: a bedroom with a closet, unit number 6/7, contained within apartment 7F containing three other bedrooms, a common living area and kitchen, two bathrooms and a common closet. This apartment is within the University Apartments located on the Campus of the University of Wisconsin-Parkside, 4019 Outer Loop Road, Kenosha County.

> [T]here are now located and concealed certain things or persons or other items of evidence, namely: firearm, ammunition, casings, any and all masks or other items used to conceal one's facial area, latex gloves or any and all gloves which may have been worn to conceal fingerprints, black plastic ties/zip strips, drill, drill bits, keys, footware, and dark clothing.
>
> . . .
>
> and requests that a search warrant be issued to search said premises for the described person and/or property.
>
> NOW, THEREFORE, in the name of the State of Wisconsin you are commanded forthwith to search the described premises and to bring the persons and/or items of evidence and the person in whose possession the same are found, and return this warrant within 48 hours before Circuit Court for Kenosha County, to be dealt with according to law.

(Easterling Aff., Ex. 503 at 1, 2.)

## ANALYSIS

Easterling claims that Officers Moeller and Pehl illegally searched his bag in violation of the Fourth Amendment. He also claims that Officer Moeller exceeded the scope of the search warrant that was issued for Easterling's room in violation of the Fourth Amendment.

### 1. Bag Search

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The defendants contend that this claim is barred by issue preclusion/collateral estoppel.

In *Allen v. McCurry*, 449 U.S. 90, 104-05 (1980), the Supreme Court held that collateral estoppel can be invoked against a § 1983 claimant to bar relitigation of his Fourth Amendment search and seizure claim decided against him in a state criminal suppression hearing. *Guenther v. Homgreen*, 738 F.2d 879, 883 (7th Cir. 1984). Thereafter, the Court indicated that federal courts should apply the state's collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state judicial proceeding. *Id.* at 884 (citing *Haring v. Prosise*, 462 U.S. 306, 313 (1983)).

A state court judgment will not be given collateral estoppel effect, though, where "the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Allen*, 449 U.S. at 96. The Supreme Court has indicated that to satisfy the "full and fair opportunity to litigate" requirement, the prior state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer v. Chemical Corp.*, 456 U.S. 461, 481 (1982).

Under the doctrine of collateral estoppel, when an issue is actually and necessarily decided by a court of competent jurisdiction, that decision is conclusive in all subsequent litigation involving a party to the prior litigation. *See Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). To determine whether a state judgment should preclude a subsequent federal action, federal courts must give the judgment the same preclusive effect as that state would give it. *Allen*, 449 U.S. at 96; *Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003. In

Wisconsin, an issue may not be relitigated if: (1) the same issue was involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the prior judgment; and (4) the party against whom estoppel is invoked was represented in the prior action. *Adair*, 230 F.3d at 893.

In a Petition for a Writ of Habeas Corpus filed in this district in 2007, Easterling challenged his 2002 judgment of conviction on the ground that he was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court with respect to the search of his bag and that he was denied effective assistance of counsel because his attorney failed to conduct discovery and to file a motion to suppress and that Easterling would not have pled guilty had he been aware of potential Fourth Amendment claims. *Easterling v. Thurmer*, Case No. 07-cv-78 (E.D. Wis. Feb. 28, 2010). In the habeas case, the court quoted from the Wisconsin Court of Appeals case affirming Easterling's Judgment of Conviction:

> The Wisconsin Court of Appeals affirmed the judgment of conviction, as well as the order denying post-conviction relief, on July 5, 2006. (Answer, Ex. F.) The court reasoned:
>
>> Easterling's postconviction motion specified, as predicates to an ineffective assistance of counsel claim, "[t]rial counsel's failure to investigate, file motions to suppress evidence [and] to compel the discovery of physical evidence." Easterling bears the heavy burden of establishing, by clear and convincing evidence, that the circuit court should permit a plea withdrawal based upon ineffective assistance. See State v. Damaske, 212 Wis. 2d 169, 191, 567 N.W.2d 905 (Ct. App. 1997). We conclude that none of these points serves to support any claim of ineffective assistance of justice.

First, we address Easterling's claims that his trial counsel failed to investigate. We reject them. He faults counsel for failing to "move the circuit to suppress tampered evidence." We are unpersuaded that the evidence was tampered with. What Easterling describes as tampering was merely the effort on the part of his roommate to find and produce various items of Easterling's clothing from various parts of the apartment. We address this issue no further.

We also address Easterling's claim that "trial counsel failed to object to the search and seizure of the appellant's bodily fluids." Again, we cannot agree. Easterling relies upon Schmerber v. California, 384 U.S. 757 (1966). However, Schmerber is utterly inapposite. Schmerber involved requiring a person to submit to withdrawal and chemical analysis of his or her blood. See id. at 761. Here, the DNA testing involved a mask seized and believed to have been used by Easterling in the course of a robbery. Schmerber does not apply, and we address this issue no further.

Next, Easterling challenges counsel's failure to file motion to suppress evidence. Again, we are unpersuaded. Easterling contends that the search warrant did not apply to a bag that he had left with a roommate, instructing him not to open it. However, the roommate's testimony shows clearly that he consented to proffering the bag to the police. As we made clear in State v. Knight, 2000 WI App 16, ¶ 13, 232 Wis. 2d 305, 606, N.W.2d 291, when a person turns material over to a third party, that person has no Fourth Amendment protection if the third party reveals or conveys it to governmental authorities. In such a setting, it does not matter whether the person had a subjective belief or expectation that the third party would not betray him or her. Id. We therefore reject Easterling's claim.

Finally, Easterling raises various challenges to trial counsel's discovery, most of them we have already addressed, and none of them persuades us. We address only his challenge to the number of the victim's

> convictions. However, from the record before us, it
> appears that Easterling failed to present any proof of this
> to the circuit court. We need address this issue no further.
>
> Easterling's briefs on appeal contain other
> subarguments and niceties that this opinion does not
> address. An appellate court is not a performing bear,
> required to dance to each and every tune played on an
> appeal. State v. Waste Management, 81 Wis. 2d 555,
> 564, 261 N.W.2d 147 (1978).
>
> Id. at 3-4.
>
> Easterling filed a petition for review with the Wisconsin Supreme
> Court on May 24, 2006. (Answer, Ex. G.) The petition for review was
> denied on September 21, 2006. (Answer, Ex. H.)

*Easterling v. Thurmer*, Case No. 07-cv-78, at 5-6 (E.D. Wis. Feb. 28, 2010) (footnote omitted). The court concluded that Easterling's Fourth Amendment claim was foreclosed by *Stone v. Powell*, 428 U.S. 465, 482 (1976), because he received a full and fair opportunity to present his Fourth Amendment claim to the state courts inasmuch as Easterling acknowledged that the circuit court held a hearing on the claim and the claim was reviewed by the court of appeals. *Id.*

Based on the foregoing, Easterling's Fourth Amendment claim based on the search of his bag is barred by issue preclusion.

**2.    Room Search**

The Fourth Amendment demands, among other things, that "no Warrants shall issue, but upon probable cause." U.S. Const amend. IV. It is undisputed that the defendants had a warrant to search Easterling's room for "certain things or persons or other items of evidence, namely: firearm, ammunition, casings, any and all masks

-13-

or other items used to conceal one's facial area, latex gloves or any and all gloves which may have been worn to conceal fingerprints, black plastic ties/zip strips, drill, drill bits, keys, footware, and dark clothing." (Easterling Aff., Ex. 503 at 1, 2.) Easterling contends that the officers executing the warrant exceeded the scope of the warrant.

A police officer executing a search warrant may seize: (I) items named in the warrant; and (ii) evidence that, although not described in the warrant, is subject to seizure under the plain view doctrine. *Russell v. Harms*, 397 F.3d 458, 465 (7th Cir. 2005) (citing *Hessel v. O'Hearn,* 977 F.2d 299, 302 (7th Cir. 1992)). The plain view doctrine applies "if the officer has a legal right to be in the place from where he sees the object subject to seizure[,] a 'lawful right of access to the object itself,' and if the object's incriminating nature is 'immediately apparent.'" *Id.* (citations omitted).

It was reasonable for the officers to believe that the papers that contained telephone numbers were things used by Easterling in the planning of the crime as the napkin and the paper each contained one name and one telephone number. See *Forman v. Richmond Police Dep't*, 104 F.3d 950, 959 (7th Cir. 1997) ("when a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions . . . must give way to the interest in the prompt and efficient completion of the task at hand)". Under the circumstances, it was reasonable for the defendants to believe that the names and telephone numbers

would aide in the apprehension of the other suspect. *See Dalis v. U.S.*, 441 U.S. 238, 255 (1979).

Easterling also contends that Officer Moeller executed an invalid search warrant through deliberate concealment when he deliberately included false information and omitted critical facts from his affidavit in order to obtain a search warrant for Easterling's room. According to Easterling, Moeller executed an invalid warrant when he submitted a false statement that Diener gave consent to search Easterling's bag, and deliberately concealed the facts surrounding Diener's consent to make the search of Easterling's bag appear legal in his search warrant affidavit, in order to obtain the issuance of a search warrant for Easterling's room from the reviewing judge.

A warrant is valid under the Fourth Amendment only where it is based "upon probable cause, supported by Oath or affirmation, and particularly describ[es] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.; *see also Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). In this case, Easterling does not challenge the facial validity of the search warrant but rather asserts that Officer Moeller submitted a false statement in the warrant affidavit.

In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the Supreme Court held that a search warrant issued based upon an affidavit containing a falsehood violates the Fourth Amendment where: (1) such affidavit includes a false statement; (2) the

-15-

false statement was either deliberately made with knowledge of its falsity or was made with reckless disregard of the truth; and (3) the affidavit would have failed to establish probable cause if the false statement was not included in the affidavit. *See also Perlman v. City of Chicago*, 801 F.2d 262, 264 (7th Cir. 1986) (*Franks* standard applies to civil action for damages based on allegation that a police officer deliberately misrepresented fact in a warrant affidavit). However, there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003) (quoting *Franks*, 438 U.S. at 171). To rebut this presumption, Easterling must provide evidence that Officer Moeller "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officers' determinations that probable cause existed for the arrests." *Id.* (quoting *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003)).

In this case, although there does appear to be certain discrepancy concerning whether Diener consented to a search of his room for the bag or to a search of the bag, it is undisputed that the defendants searched the bag. In addition, there is no Fourth Amendment violation regarding the search of the bag as Easterling had "a full and fair opportunity" to litigate this claim in state court. Easterling has not made a substantial showing the Officer Moeller lied in the affidavit. The defendants are, therefore, entitled to summary judgment on this claim. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket #45) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #50) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** on its merits together with costs as taxed by the Clerk of the Court.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge